2013 COA 79

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ronald Huey BERNARD, Jr., Defendant–Appellant.

Court of Appeals No. 12CA0495

Colorado Court of Appeals, Div. V.

Announced May 23, 2013

John W. Suthers, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cynthia J. Jones, Deputy State Public Defender, Deana M. Feist, Deputy State Public Defender, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY

¶ 1 Defendant, Ronald Huey Bernard, Jr., appeals the judgment of conviction entered following a jury verdict finding him guilty of one count of violating a protection order. We affirm.

¶ 2 As an issue of first impression, we consider the requirements for proper authentication of e-mails under CRE 901. We conclude that e-mails may be authenticated (1) through testimony explaining that they are what they purport to be; or (2) through consideration of distinctive characteristics shown by an examination of their contents and substance in light of the circumstances of the case.

## I. Background

¶ 3 On August 11, 2011, a mandatory protection order was entered, naming defendant as the restrained party and the victim and her son as the protected parties. The order restrained defendant from harassing, molesting, intimidating, contacting, or communicating with the victim, and ordered defendant to vacate the victim's home. He was advised of the order and its contents during an in-custody video advisement with a magistrate.

¶ 4 The victim testified that, on August 15, defendant called her to wish her a happy birthday and arranged to pick up some of his clothing that she planned to leave outside her door. He arrived at her apartment in the early hours of August 16 and banged and knocked on her doors and windows. The victim testified that it sounded as if he were trying to get in. During the incident defendant told her that if she showed up in court the next day, one of them would not be "making it back," and that he would kill her if she called the police. The victim called her mother and then called the police.

¶ 5 Defendant testified that he was living with the victim on the days leading up to this incident, and they had spent the entire day together on August 15. He said that late that night and into the early morning of August 16, the two had an argument, after which he left to smoke a cigarette. When he had finished, he returned and attempted to get back into the apartment.

¶ 6 The responding police officers testified that when they arrived, they found defendant in a basement storage room in the victim's apartment complex. Defendant was arrested, and later charged with one count of intimidation of a witness and one count of violation of a protection order. He was acquitted of the witness intimidation charge, but was found guilty and convicted of violating a protection order.

## II. Discussion

### A. Admission of E–Mail into Evidence

■ ¶ 7 Defendant first argues that the trial court erred in admitting an e-mail into evidence because it was not properly authenticated. We disagree.

■ ¶ 8 We review evidentiary rulings, including foundation and authentication rulings, for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993); *People v. Huehn*, 53 P.3d 733, 736 (Colo.App.2002). A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Melillo*, 25 P.3d 769, 773 (Colo. 2001).

¶ 9 On the morning that the victim was scheduled to testify in defendant's trial, an e-mail was sent to the victim from defendant's e-mail account. It stated, "I told you it wuz us r nobody u gettin ready 2 make the biggest mistake my God have mercy on Ur soul rip [sic]." The e-mail was admitted into evidence.

■ ¶ 10 Contrary to defendant's argument, the e-mail was sufficiently authenticated. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a); *see also People v. Crespi*, 155 P.3d 570, 574 (Colo.App.2006); *Huehn*, 53 P.3d at 736. We conclude that e-mails may be authenticated (1) through testimony explaining that they are what they purport to be, *see* CRE 901(b)(1); or (2) through consideration of distinctive characteristics shown by an examination of their contents and substance in light of the circumstances of the case, *see* CRE 901(b)(4). *See also United States v.*

*Fluker*, 698 F.3d 988, 999 (7th Cir.2012) (applying Fed.R.Evid. 901(b)(1) and (4), which are identical to CRE 901(b)(1) and (4), to e-mails); *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir.2000) (applying Fed. R.Evid. 901(b)(4) to e-mails).

¶ 11 When the victim was shown a hard copy of the e-mail, she testified that it was a true and accurate copy of the e-mail that defendant had sent to her. She stated that she received it at 1:02 a.m. on the morning of her testimony, and that she recognized the e-mail address of the sender as one that belonged to defendant. She further testified that she understood the e-mail to be a threat that "scared [her] a lot." Defendant did not contest that the sending e-mail address belonged to him. In addition, the contents of the e-mail indicated knowledge by the sender of defendant's previous relationship with the victim, as well as knowledge that the victim was scheduled to testify later that day.

■ ¶ 12 While the victim admitted that she had had access to defendant's e-mail account in the past, any doubt about whether defendant had actually sent the e-mail went only to the weight of the evidence and not to its admissibility. *See Crespi*, 155 P.3d at 574.

¶ 13 We therefore conclude that the court did not abuse its discretion in admitting the e-mail into evidence.

### B. Sufficiency of the Evidence

¶ 14 Defendant next argues that the prosecution failed to present sufficient evidence proving beyond a reasonable doubt that he was guilty of violating a protection order. We disagree.

### 1. Standard of Review

¶ 15 We review de novo whether the evidence was sufficient to support the conviction. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005); *People v. Randell*, 2012 COA 108, ¶ 29, 297 P.3d 989.

¶ 16 In assessing the sufficiency of the evidence, we must determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial

and sufficient to support a conclusion by a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Dempsey*, 117 P.3d at 807; *People v. Davis*, 2012 COA 56, ¶ 12, 296 P.3d 219. The prosecution is given the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Poe*, 2012 COA 166, ¶ 14, —— P.3d ——, 2012 WL 4829493. And it is the fact finder, not the reviewing court, that determines the credibility of witnesses, weighs the evidence, and resolves conflicts, inconsistencies, and disputes in the evidence. *Id.*

### 2. Analysis

¶ 17 A person commits the crime of violation of a protection order if (1) he or she has been "personally served with a protection order that identifies the person as a restrained person" or has otherwise "acquired from the court or law enforcement personnel actual knowledge of the contents of [the] protection order," and (2) he or she "[c]ontacts, harasses, injures, intimidates, molests, threatens, or touches the protected person or protected property" or violates any other provision of that protection order. § 18–6–803.5(1)(a), C.R.S.2012.

¶ 18 There is no dispute that a protection order was issued, which identified defendant as the restrained person and the victim and her son as the protected persons. The order prohibited defendant from harassing, molesting, intimidating, or contacting the victim, and ordered defendant to vacate and stay away from her home. The order bore a stamp saying, "Defendant advised on the record." Defendant testified that he knew about the protection order and conceded that he was advised of its existence during a video conference with the court. He claims, however, that he was not informed of its specific provisions.

¶ 19 Contrary to defendant's argument, the record shows that he was informed of the contents of the protection order through a video advisement from a magistrate while he was previously in custody. The trial court accepted the order into evidence at trial. The court also took judicial notice of the protection order and instructed the jury that "defendant was advised of the mandatory protection order and was advised of the conditions set forth in that mandatory protection order."

¶ 20 Several witnesses also offered testimony showing that although the order was in place, defendant called the victim on August 15, went to her apartment in the early morning of August 16, knocked and banged on her windows and doors, and attempted to get into her apartment. He was arrested at the victim's apartment complex after the victim called the police. Moreover, defendant's own testimony—that he was living in the apartment with the victim at the time the incident took place and spent the entire day of August 15 with her—establishes that he violated the order.

¶ 21 We therefore conclude that sufficient and substantial evidence was presented to support the jury's conclusion that defendant was guilty beyond a reasonable doubt of violation of a protection order. *See Dempsey*, 117 P.3d at 807.

Judge ROMÁN and Judge ROTHENBERG * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2012.